C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
   EDMOND HUERTAS,                       :

                                        Petitioner,     :   **MEMORANDUM DECISION AND ORDER**

                   - against -               :   23-cv-2371 (BMC)

   ANTHONY ANNUCCI,               :

                              Respondent.   :
----------------------------------------------------------------- X

**COGAN**, District Judge.

    Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254(d) from his conviction for second degree murder and second degree criminal possession of a weapon, for which he was sentenced, as a repeat felony offender, to concurrent terms of 25 years to life in prison. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner shot and killed his girlfriend during a domestic argument.

    Here, he reprises a number of points of error that he raised on direct appeal. First, he argues that because a portion of his trial transcript is missing, he suffered an unconstitutional limitation on his ability to obtain appellate review. Second, he argues that his motion to suppress should have been granted and that the prosecutor misused the information that should have been suppressed. Third, he argues that the trial court's ruling on various evidentiary points offended his right to due process. In addition, he raises unexhausted claims for ineffective assistance of counsel.

    For the reasons discussed below, petitioner's exhausted claims are either not subject to review in a federal habeas corpus proceeding or do not warrant relief under the Antiterrorism and

Effective Death Penalty Act, 28 U.S.C. § 2254.  His unexhausted claims are plainly meritless. The petition is accordingly denied.

I.      **Missing Portion of Transcript**

When asked to put together the trial transcript for petitioner's appeal, a court reporter filed an affidavit saying she had lost a portion of her notes from the trial.  The missing portion consisted of the time between the completion of jury selection and the calling of the prosecution's first witness.  Thus, it appears that the court's preliminary instructions to the jury, the attorneys' opening statements, and any colloquy that the lawyers had with the trial court during that period are missing from the record.

On direct appeal, petitioner argued that he was entitled to a new trial, or at least a reconstruction hearing, because of the missing portion of the record.  The Appellate Division summarily rejected the claim as "without merit" and that he had "failed to establish his entitlement to a reconstruction hearing."  People v. Huertas, 186 A.D.3d 731, 734, 128 N.Y.S.3d 597, 601 (2020), aff'd, 38 N.Y.3d 1129, 172 N.Y.S.3d 660 (2022).

At the outset, I note that this is a case of "drive-by exhaustion."  That is, petitioner's argument to the Appellate Division was presented solely as a matter of state law, except that at the end of the first paragraph, he included a non-contextual citation to "U.S. Const., Amend. XIV."  This is a common means of attempting to "federalize" state claims to satisfy the exhaustion requirement for a future habeas petition, and I will assume its adequacy.  See Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 192 (2d Cir. 1982).

However, in this case, exhaustion is immaterial for purposes of habeas corpus because the Supreme Court has firmly rejected the notion of a due process right to appeal at all.  See

Lackawanna Cnty. Dist. Att'y v. Coss, 532 U.S. 394, 402 (2001) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)); Estelle v. Dorrough, 420 U.S. 534, 536 (1975) ("[T]here is no federal constitutional right to state appellate review of state criminal convictions.").

In assessing whether a habeas petitioner could challenge errors in state collateral post-conviction proceedings, the Second Circuit held in Word v. Lord, 648 F.3d 129, 132 (2d Cir. 2011):

> Section 2254 authorizes a federal court to grant a writ only where a state holds a petitioner in its custody in violation of "the Constitution or laws or treaties of the United States."  As the Supreme Court has recognized, the Constitution does not compel states to provide post-conviction proceedings for relief.  A majority of our sister Circuits have accordingly concluded that errors in state post-conviction proceedings do not provide a basis for redress under § 2254.
>
> We agree, and hold that alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief.

(citations omitted).  The same reasoning applies to petitioner's challenge here, as there is likewise no due process right to direct appellate review.  See McKane v. Durston, 153 U.S. 684, 687 (1894) ("A review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law and is not now a necessary element of due process of law.").

Petitioner's missing transcript claim is therefore not cognizable on habeas corpus review.

## II.     Denial of Motion to Suppress and Prosecutorial Misconduct Claim

These interrelated claims arose from the fact the police, acting on a tip, entered a house without a warrant where petitioner was present, although he did not live there.  Petitioner attempted to run and hide under a bed but the police arrested him.  The police officers testified at trial as to petitioner's attempt to evade them.  After his arrest, he then told the police that the

3

shooting was an accident, although this statement was not introduced at trial. The hearing court denied his motion.

In summation, the prosecutor argued as to the flight evidence: "Hiding, flying, fleeing. Why? Why is Edmond Huertas i[n] Brooklyn on June 7th, under a bed? Why isn't he talking to the police? Why isn't he telling them what happened . . . ?"

On appeal, petitioner made two arguments that he reprises here.

**A. The Payton Claim**

Petitioner contends, as he did in the Appellate Division, that entry into the house required a warrant under Payton v. New York, 445 U.S. 573 (1980), and the observations of the arresting officers of petitioner's attempted flight should have been suppressed as fruit of the poisonous tree.

The Appellate Division held that the claim was "unpreserved for appellate review" and "[i]n any event, without merit." Huertas, 186 A.D.3d at 733, 128 N.Y.S.3d at 600. It found that "[t]he evidence at the pretrial suppression hearing established that the defendant did not reside at the apartment where he was arrested, and the defendant failed to establish a legitimate expectation of privacy in the apartment." Id.

Petitioner's Fourth Amendment Payton claim is not cognizable on habeas corpus review under the rule in Stone v. Powell, 428 U.S. 465 (1976).[1] There, the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided

---

[1] The Court provided prior notice to petitioner that this case implicated Stone and invited him to address its application. Petitioner did not respond.

4

an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494. The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95.

Based on Stone, the Second Circuit has held that habeas corpus review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). As to the first part of this test, courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See Capellan v. Riley, 975 F.2d 67, 72 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298, 318 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005). For this reason, courts within this Circuit have almost uniformly held that challenges to a state court's rulings as to the application of the exclusionary rule are not reviewable under Stone. See, e.g., Marino v. Superintendent, Franklin Corr. Facility, No. 17-cv-1650, 2019 WL 1232088, at *4-5 (E.D.N.Y. March 15, 2019); Coleman v. Racette, No. 15-cv-4904, 2019 WL 948401, at *9-10 (S.D.N.Y. Feb. 2, 2019); Doll v. Chappius, No. 15-cv-6400, 2018 WL 6310191, at *9-10 (W.D.N.Y. Dec. 3, 2018); Wilson v. Graham, No. 17-cv-0863, 2018 WL 6001018, at *5-6 (N.D.N.Y. Nov. 15, 2018); Holley v. Cournoyer, No. 17-cv-587, 2018 WL 3862695, at *4-5 (D. Conn. Aug. 14, 2018); Ala v. Vermont, No. 10-cv-221, 2011 WL 1843045, at *4 (D. Vt. April 4, 2011).

5

Here, there can be no question that the state courts had adequate remedies to address alleged Fourth Amendment violations and that petitioner in fact fully utilized those remedies. He had an evidentiary hearing on his illegal entry claim and obtained appellate review of the trial court's ruling denying suppression. He also had the opportunity for review as of right in the in the Court of Appeals. Thus, the issue is not cognizable before this Court.

### B. Prosecutorial Misconduct

Alternatively, petitioner argues, as he did in the Appellate Division, that even if the police officer's observations did not have to be suppressed under the Fourth Amendment, the prosecutor violated petitioner's right to remain silent and engaged in misconduct by rhetorically asking the jury why, if petitioner wasn't guilty, he was running from the police instead of telling them what happened. The suggestion that petitioner would have told the police what happened if he was innocent, petitioner contended, violated his right to remain silent. It also was misleading because – although the jury did not know – he was not silent: he told the police officers that the shooting was an accident.

This Court's review of his prosecutorial misconduct claim is constrained by the AEDPA. Because the Appellate Division alternatively rejected petitioner's claim on the merits, petitioner's claim must be viewed through the prism of AEDPA's narrow review standard. AEDPA permits habeas relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quoting

another source). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White v. Wheeler, 577 U.S. 73, 76-77 (2015) (per curiam) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013))).

Petitioner's burden to show constitutional error is doubly difficult because he must not only meet the AEDPA standard, but the exacting showing that is required to demonstrate fundamental error in a closing argument. Under federal law, a prosecutor has wide latitude in making his closing argument. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor has made improper comments in summation, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181-83 (1986). To be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."

7

Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (habeas relief is warranted only where the prosecution's claimed misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

Under this exacting standard, I cannot find that the Appellate Division's ruling was contrary to or an unreasonable application of any Supreme Court decision. The prosecutor's reference to "not talking to the police" was likely excessive, but seen in context, the prosecutor was referring to the evidence of flight that had been introduced during the trial, and there was nothing wrong with that. There was no evidence at trial that petitioner had or had not said anything to the police upon his arrest.

Moreover, as noted above, the prosecutor's remark would have to have rendered the trial fundamentally unfair to warrant habeas relief. That could not be the case here because the evidence was so overwhelming. The victim's friend, Miriam, testified that the victim had called her, crying, and asked her to come pick her up. Petitioner then took the victim's phone and said, "she's not coming" and then told Miriam to "listen." Miriam further testified that she then heard a loud sound over the phone line, and petitioner got back on the phone and said, "I just killed Joanne." Miriam went with another friend, Frances, to the victim's apartment and found the victim unconscious and bleeding on the couch from a gunshot wound to the head, from which the victim died shortly thereafter. Miriam further testified that she and Frances saw petitioner in the apartment holding a gun, which he pointed at them and shouted at them not to come in, but then said, "go help your friend." Petitioner left the apartment and Miriam called 911. Miriam testified as above; Frances corroborated her in all respects; a police detective testified that they told him the same thing immediately after his arrival on scene; when the police found petitioner

8

several days later, he attempted to run and hide; and telephone records corroborated Miriam's and Frances' accounts.

Under these circumstances, the prosecutor's fleeting reference to not telling the police what happened was not nearly sufficient to render the trial fundamentally unfair. The argument will not support habeas corpus relief.

### III.  Evidentiary Rulings

#### A.  Pretrial Rulings on Prior Convictions (Sandoval)

The trial court ruled that if petitioner chose to testify, the prosecution could impeach him with three prior gun-related convictions, including the underlying facts of attempted murder and domestic violence convictions. In addition, if petitioner chose to testify, he could be asked about prior incidents of domestic violence between himself and the victim. Petitioner chose not to testify.

Petitioner contended on appeal that the hearing court's rulings deprived him of his right to testify as it deterred him from testifying at trial. The Appellate Division rejected his argument, noting the overwhelming evidence of guilt. However, two judges dissented, finding that allowing cross-examination on the facts of a 20-year old gun conviction was an abuse of discretion, and that the ruling effectively deprived defendant of his due process right to testify.

Because petitioner chose not to testify, this claim is not amenable to review under federal habeas corpus law. In Luce v. United States, 469 U.S. 38, 43 (1984), the Supreme Court held that "a defendant must testify" to "raise and preserve for review the claim of improper impeachment with a prior conviction." A reviewing court "cannot assume that the adverse ruling motivated a defendant's decision not to testify," the Court explained, for "an accused's decision

9

whether to testify seldom turns on the resolution of one factor." Id. at 42 (citation and internal quotation marks omitted). Accordingly, when a defendant does not testify, any harm flowing from the pretrial ruling is "wholly speculative," and harmless error review becomes impossible. Id. at 41.

Although Luce involved direct review of a federal district court's interpretation of the Federal Rules of Evidence, courts have extended Luce's holding to other contexts, including habeas review. See Mercado v. Phillips, No. 04-cv-2204, 2011 WL 1157617, at *6 (S.D.N.Y. Feb. 22, 2011) (collecting cases), report and recommendation adopted, 2011 WL 1157570 (S.D.N.Y. March 29, 2011). Indeed, district courts in the Second Circuit have followed "a bright-line rule . . . barring habeas relief for allegedly erroneous Sandoval rulings in instances where a defendant elects not [to] testify." Shannon v. Senkowski, No. 00-cv-2865, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000).

Habeas corpus review does not apply to hypothetical situations that may have occurred but for state court rulings. The need to measure prejudice cannot be satisfied by comparing testimony that petitioner never gave to the hearing court's ruling about what might have happened if he did. I thus conclude that, because petitioner did not testify, Luce bars habeas review of the Sandoval ruling allowing the prosecution to cross-examine petitioner about prior convictions were he to have testified at trial.

### B. Prior Domestic Violence Incidents (Molineux)

Miriam and Frances lived together and both were good friends of the victim. They testified that on the day of the murder, the victim called them, crying, and asked if she (the victim) could come over to their apartment. Miriam told her to come over and said that if she

10

(the victim) did not come in 10 or 15 minutes, Miriam was going to go to the apartment that the victim shared with petitioner and get her.[2]

The prosecutor asked whether Miriam had ever seen petitioner get physical with the victim prior to the day in question but the trial court sustained an objection. The prosecutor then inquired whether Miriam had ever observed "something on her [the victim]," and Miriam answered that about six months earlier, the victim had a bruised lip. Miriam had asked the victim why her lip was bruised and the victim responded that petitioner had hit her.[3] Miriam also testified that three or four weeks prior to the murder, while she and the victim were getting ready for a wedding, she had observed bruising on the victim's arms and shoulders and she had asked the victim why she was bruised. The victim told her that petitioner had hit her because he didn't want her to go to the wedding.

The trial court, overruling petitioner's objections, gave a limiting instruction that the testimony was not admitted to prove petitioner's propensity, but rather solely to show Miriam's and Frances's state of mind, i.e., to explain why Miriam had told the victim on the day of the murder that if she didn't come to their apartment in 10 or 15 minutes, they were going to go get her.

On appeal, petitioner argued that the prior incidents of domestic violence should have been excluded because they were unduly prejudicial and hearsay. Noting the limiting instruction, the Appellate Division rejected the claim on the merits: "The victim's out-of-court statements were not admitted for their truth, but to explain the witnesses' state of mind and their

---

[2] Miriam testified that she said 10-15 minutes; Frances testified that Miriam said about half an hour.

[3] Frances was present at this discussion and her testimony corroborated Miriam's.

11

subsequent actions on the date of the murder." Huertas, 186 A.D.3d at 733, 128 N.Y.S.3d at 600.

"Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error was so extremely unfair that its admission violates fundamental conceptions of justice." Buchanan v. Chappius, No. 15-cv-0407, 2016 WL 1049006, at *4 (N.D.N.Y. Mar. 11, 2016) (citations and internal quotation marks omitted); accord Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." (internal quotation marks omitted)). That is a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." Bonet v. McGinnis, No. 98-cv-6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotation marks omitted).

Accordingly, for petitioner to succeed with his federal habeas corpus petition asserting state evidentiary errors, he must establish that (1) the trial court's evidentiary rulings were erroneous as a matter of state law, (2) the admitted evidence deprived him of a fundamentally fair trial, and (3) under the AEDPA, the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See, e.g., Sorrentino v. LaValley, No. 12-cv-7668, 2016 WL 11482062, at *16 (S.D.N.Y. Feb. 3, 2016) ("[E]rroneously admitted hearsay statements cannot provide a basis for federal habeas relief unless the evidentiary error so

undermined the fairness of the trial as to violate the petitioner's constitutional right to due process.").

Petitioner cannot meet any of these requirements. First, the evidence was not inadmissible as a matter of state law. State courts have admitted similar evidence for similar reasons in other domestic violence cases. See People v. Rose, 41 A.D.3d 742, 743, 840 N.Y.S.2d 363 (2d Dep't 2007); People v. Bierenbaum, 301 A.D.2d 119, 149-151, 748 N.Y.S.2d 563 (1st Dep't 2002). In such cases, proof of prior assaults and threats is particularly relevant "not only to issues of identity and intent, but also 'to provide background information concerning the context and history of the defendant's relationship with the victim.'" Burkett v. Artus, No. 14-cv-0110, 2016 WL 6659492, at *12 (N.D.N.Y. Nov. 10, 2016) (cleaned up) (quoting People v. Wertman, 114 A.D.3d 1279, 1280, 980 N.Y.S.2d 688 (4th Dep't 2014)).

Nor did the evidence of prior incidents deprive petitioner of a fundamentally fair trial. No doubt, hearsay evidence about prior incidents in a domestic violence murder case can be highly prejudicial to a defendant. But the prosecutor was understandably concerned that if the prior incidents were not disclosed to the jury, the jury might wonder why Miriam had told the victim on the phone that if the victim did not come to Miriam and Frances in 10 or 15 minutes, Miriam was coming to her. That would be a strange thing for Miriam to have said without the background of Miriam being aware that there was a domestic violence problem. Unsurprisingly, petitioner's trial counsel aggressively challenged the credibility of both Miriam and Frances, and the prosecutor was concerned that an unexplained expression of why Miriam had told the victim that she (Miriam) was coming over if the victim did not come to her would raise an unanswered question for the jury. Under these circumstances, the trial court's limiting instruction – in effect,

13

that the evidence was not to be taken to show what petitioner had done but only to show why Miriam had said what she said, was the proper way to handle the issue.

Finally, even had there been a due process violation, it would not reach the level for relief under the AEDPA. Again, I will assume that petitioner's fleeting reference to the Fourteenth Amendment in his direct appeal brief – without any citation to federal precedent – was sufficient to exhaust this claim, but the fact remains that the Appellate Division's decision is neither contrary to nor an unreasonable application of any Supreme Court decision.[4]

### C. The 911 Call

When Miriam and Frances arrived at the victim and petitioner's apartment and found the victim dying on a couch, they yelled at petitioner to leave the apartment and when he did, Miriam called 911. The recorded call had two components. The first was Miriam's conversation with the 911 operator. Both sides agreed in the Appellate Division that in this portion of the call, Miriam was "hysterical" and repeatedly said, "he shot her." The line was then left open and subsequent conversations occurred between Miriam and the responding officers. The prosecutor wanted both parts admitted into evidence, but the trial court sustained trial counsel's objection to the second part, i.e., Miriam's conversations with the responding officers. Trial counsel did not object to Miriam's hysterical conversation with the 911 operator, and that portion of the call was admitted. On appeal, the Appellate Division rejected the claim:

> This contention is unpreserved for appellate review, and, in any event, without merit. The portion of the 911 call at issue was properly admitted under the excited utterance exception to the hearsay rule, since the recording evidenced that

---

[4] Petitioner also argued that the prosecutor misused the prior conduct in summation by arguing that it showed petitioner was guilty, thereby disregarding the trial court's limiting instruction. The prosecutor said no such thing. She used the prior incidents solely to explain why Miriam and Frances took the actions they did, precisely what the limiting instruction allowed.

> the witness was under the influence of the excitement of the incident and lacked the reflective capacity essential for fabrication.

Huertas, 186 A.D.3d at 733, 128 N.Y.S.3d at 600 (citations omitted).

No federal constitutional issue is raised by this point of error. As noted above, evidentiary issues of state law are rarely sufficient to deprive a defendant of a fundamentally fair trial. Moreover, I see no error of state law in admitting the call – Miriam came upon her friend dying, and after successfully getting petitioner to leave the apartment after menacing her with his gun, she called 911 in hysterics. As the Appellate Division found, it is a classic excited utterance.

### IV. Unexhausted Ineffective Assistance Claims[5]

Petitioner contends that his appellate counsel was ineffective because in presenting his case to the New York Court of Appeals, she did not put forward the "transcript issue" (see section I, supra) that the Appellate Division had rejected. Instead, she chose to assert a single issue: the trial court's decision to permit cross-examination on petitioner's prior convictions and past acts of domestic violence if he chose to testify.

As a technical matter, because petitioner has not brought a *coram nobis* proceeding against his former appellate counsel in state court, this claim is unexhausted. However, under Rhines v. Weber, 544 U.S. 269 (2005), a federal district court can reach an unexhausted issue, rather than dismissing the petition or staying it pending exhaustion, if that unexhausted issue is "plainly meritless." See also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus

---

[5] This Court can review unexhausted claims in a petition containing both exhausted and unexhausted claims if the unexhausted claims are "plainly meritless." See Rhines v. Weber, 544 U.S. 269 (2005).

15

may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State); Woodard v. Chappius, 631 F. App'x 65, 66 (2d Cir. 2016).

That is the case here.

The standard for ineffective assistance of trial counsel from Strickland v. Washington, 466 U.S. 668 (2005), is also applicable to ineffective assistance of appellate counsel claims. Smith v. Robbins, 528 U.S. 259, 285 (2000). To state a claim for ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure" to raise an issue on appeal, "he would have prevailed on his appeal." Id. (citation omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (cleaned up). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Moreover, it is well settled that "[a]ppellate counsel has wide latitude to select which arguments to raise on appeal, and her failure to raise a claim will amount to ineffective assistance only when it is 'outside the wide range of professionally competent assistance.'" Silva v. United States, No. 01-cr-1110, 2009 WL 10713720, at *1 (S.D.N.Y. Sept. 14, 2009) (citation omitted) (quoting Claudio v. Scully, 982 F.2d 798, 805 (2d Cir. 1992)). For that reason, "[a]n ineffective assistance of appellate counsel claim cannot be based on a counsel's decision not to pursue an issue which his client considers important." Best v. Kelly, No. 91-cv-2638, 1991 WL 341736, at

\*3 (E.D.N.Y. Nov. 21, 1991) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). As one court has noted:

> The Strickland standard is difficult to meet in any procedural context, and perhaps especially so when the claim is that a lawyer failed to make an argument on direct appeal. . . . In order to show deficient performance by his appellate counsel – Strickland's first prong – petitioner must show that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

Carrasco v. Miller, No. 17-cv-7434, 2020 WL 9256469, at \*19 (S.D.N.Y. Nov. 13, 2020) (cleaned up), report and recommendation adopted, 2021 WL 1040473 (S.D.N.Y. March 18, 2021).

Petitioner's argument falls way short of this standard. Although he did not prevail in the Appellate Division, his lawyer obtained a 3-2 split decision on the issue of whether the trial court had properly ruled that petitioner, if he testified, could be cross-examined about his prior convictions. Petitioner's counsel moved for leave to appeal to the Court of Appeals on all issues, but clearly focused on the prior convictions issue. The Appellate Division granted leave to appeal to the Court of Appeals, without narrowing the issues that could be raised in the Court of Appeals, and appellate counsel made the decision to assert only the prior conviction issue. The Court of Appeals affirmed the decision of the Appellate Division, one judge dissenting.

Having failed to prevail in the Appellate Division by only one vote, it is no wonder that appellate counsel chose to focus exclusively on the prior conviction issue in the Court of Appeals. Any reasonable appellate lawyer would have done that. Appellate counsel made a judgment that the prior conviction issue was the "bread and butter" issue, if there was one, and a procedural point about a small portion of preliminary proceedings being misplaced, without any ability to show prejudice arising from that, is likely to have been of little interest to the New

17

York Court of Appeals. Indeed, the fact that appellate counsel obtained two votes for her argument in the Appellate Division and one vote in the Court of Appeals shows the reasonableness of her decision.

This was a paradigmatic example of counsel choosing to present the strongest issue instead of the weakest issue. It is plainly meritless to contend that doing so was ineffective assistance of counsel.[6]

## CONCLUSION

The petition is denied and the case is dismissed. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
May 25, 2023

---

[6] In addition, petitioner contends in his habeas corpus petition that his trial counsel was constitutionally ineffective for not objecting to the first portion of the 911 call. This claim was, in fact, exhausted in the Appellate Division. However, since the Appellate Division ruled that the call was properly admitted as an excited utterance and this Court has agreed, the claim is plainly meritless whether exhausted or not.